UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ISMEL A.F.,

          Petitioner,

     v.

WARDEN, GOLDEN STATE ANNEX
DETENTION FACILITY et al.,

          Respondents.

No. 1:26-cv-05243-TLN-SCR

A# 240-804-615

**RELEASE ORDER**

This matter is before the Court on Petitioner Ismel A.F.[1]'s ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1), Motion for Temporary Restraining Order (ECF No. 3), and Motion to Appoint Counsel (ECF No. 4).  Respondents filed a Motion to Dismiss (ECF No. 9) and an opposition to the habeas petition (ECF No. 11).  For the reasons set forth below, Petitioner's habeas petition is GRANTED and his motions are DENIED as moot.  Respondents' Motion to Dismiss is DENIED.

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND[2]

The instant matter arises from Petitioner's allegedly unlawful detention by immigration authorities. (ECF No. 1.)

Petitioner was first encountered by United States Border Patrol on April 16, 2022 at Eagle Pass, Texas. (ECF No. 11-1 at 3.) He was arrested for an alleged illegal entry and then released. (*Id.*) He has no criminal history and since entering this country he has worked to support his family, including his son. (*Id.*; ECF No. 1 at 5.)

On January 28, 2026, Petitioner, while a passenger in the vehicle, was arrested by local law enforcement during a traffic stop and transferred to the custody of U.S. Immigration and Customs Enforcement ("ICE"). (ECF No. 11-1 at 3.) On February 24, 2026, Petitioner filed a petition for writ of habeas corpus with the United States District Court for the Northern District of Texas, challenging his detention in the Bluebonnet Detention Center. (ECF No. 9-1 at 3.) The government transferred Petitioner to the Golden State Annex Detention Facility on or about May 22, 2026. (ECF No. 9 at 1.) Respondents have not provided Petitioner with any hearing as to his detention; indeed, he is being "detained with no bond pending the outcome of [his] immigration proceedings." (ECF No. 11-1 at 4.)

Petitioner filed the instant Petition for Writ of Habeas Corpus in this Court on July 8, 2026, challenging the lawfulness of his detention. (ECF No. 1.)

## II.     STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has

---

[2] The facts set forth below are either taken from Respondents' documents or not disputed by them. (ECF Nos. 9, 11.)

2

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.   ANALYSIS**

A.   <u>First to File Rule</u>

Respondents argue that the habeas petition should be dismissed or stayed pending resolution of Petitioner's habeas case before the United States District Court for the Northern District of Texas pursuant to the first-to-file-rule. (ECF No. 9.)

"There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). The rule "applies when two cases involving 'substantially similar issues and parties' have been filed in different districts." *In re Bozic*, 888 F.3d 1048, 1051 (9th Cir. 2018) (*quoting Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015)). "However, this 'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*, 678 F.2d at 95. Courts undertaking the first-to-file analysis should be guided by "the three pillars supporting the first-to-file rule—economy, consistency, and comity." *Young v. L'Oreal USA, Inc.*, 526 F. Supp. 3d 700, 706 (N.D. Cal. 2021).

Respondents point to the Texas court's Order clarifying that it retained jurisdiction over Petitioner's habeas petition despite his transfer out of the territorial confines of the district. (ECF No. 9-2.) That fact does not divest this Court of jurisdiction. Because Petitioner filed his Petition for Writ of Habeas Corpus while detained in this district, the Court has jurisdiction to rule on the claims presented therein. *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in . . . the district of confinement.")

Upon review of the docket in *Francisco-Casas v. Warden of Bluebonnet Detention*

*Facility*, No. 1:26-cv-84 (N.D. TX), the Court is satisfied that the interests of comity, consistency, and judicial economy would not be served by declining to accept jurisdiction in this case.  The Texas court has entered no substantive orders with which this Court's ruling would conflict.  *Id.* Sufficient briefing has been submitted to this Court to permit it to rule on the Petition, and judicial economy would not be favored by holding the matter in abeyance, particularly given the substantial liberty interest at stake.

The Motion to Dismiss is, accordingly, DENIED.

B.  Fifth Amendment Due Process Clause

Petitioner challenges his continued detention without a hearing as violating the Fifth Amendment's Due Process Clause.  (*See* ECF No. 1 at 16.)  In opposition, Respondents contend Petitioner is an "applicant for admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").  (*See* ECF No. 11.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  S*ee Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

//

//

*i.  Liberty Interest*

As to step one, the Court finds Petitioner gained a protected liberty interest in continued freedom when released by Respondents.  (*See* ECF No. 11-1 at 3.)  This release was an "implicit promise" that Petitioner would not be re-detained during the pendency of his immigration proceedings.  *See Morrissey*, 408 U.S. at 482.  Petitioner has lived and worked in this country since 2022, supporting his family, including his son, thus developing substantial ties to his community and enduring connections of normal life.  (ECF No. 1 at 5.)  Petitioner therefore has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Respondents' opposition was not timely filed.[3]  Nevertheless, their only arguments in opposition are ones that this Court has repeatedly rejected.  The vast majority of courts across the Ninth Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2).  *See e.g.*, *Hortua v. Chestnut*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Orestes Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of [§] 1225(b)(2)(A); (2) disregards the relationship between [§§] 1225 and 1226; (3) would render a recent amendment to [§] 1226(c) superfluous; and (4) is inconsistent with decades of

---

[3]    On July 9, 2026, the Court ordered Respondents to file an answer to the habeas petition by July 13, 2026, warning that "[f]ailure to timely respond shall be construed as a non-opposition." (*Id.*).  Respondents filed their opposition on July 14, 2026.  (ECF No. 11.)  The Court considers Respondents' arguments regarding their authority to detain Petitioner, but warns that future late filings may be construed as non-opposition.  *See* E.D. Cal. L.R. 230(c).

prior statutory interpretation and practice."  Lepe v. Andrews, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases).  Respondents put forth no new arguments or facts justifying a different conclusion in this case.  (*See generally* ECF No. 11.)  Accordingly, Petitioner has a clear interest in his continued liberty protected by the Due Process Clause.

### ii.  Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him.  The amount of time Petitioner spent at liberty underscores the gravity of its loss.  *See Doe*, 787 F. Supp. 3d at 1094.  Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes.  *Hernandez*, 872 F.3d 976.  As Respondents do not argue Petitioner is a danger to the public or a flight risk, and Petitioner has no criminal history and has demonstrated ties to his community in this country, the risk that he is being detained without proper justification is exceedingly high.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025

6

WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low.  The effort and cost required to provide Petitioner procedural safeguards are minimal.  *See Doe*, 787 F. Supp. 3d at 1094.  Notice and custody determination hearings are routine processes for Respondents.  Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.  Respondents articulate no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral decisionmaker prior to his detention and received neither.  Petitioner's detention thus violates the Fifth Amendment Due Process Clause.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus[4] (ECF No. 1) and DENIES Petitioner's Motion for Temporary Restraining Order (ECF No. 3) and Motion to Appoint Counsel (ECF No. 4) as moot.  The Court also DENIES Respondents' Motion to Dismiss (ECF No. 9).  The Court further orders as follows:

1.    Respondents must IMMEDIATELY RELEASE Petitioner Ismel A.F. (A# 240-804-615) from custody.  At the time of release, Respondents must return all of Petitioner's documents and possessions.  **Respondents must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2.    Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public and/or ensuring Petitioner appears

---

4    Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act.  (ECF No. 1 at 17.)  The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

7

at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention.[5]  *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

**3.     The Clerk of Court is directed to serve Golden State Annex Detention Facility with a copy of this Order.**

4.     The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: July 16, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

---

[5]     In their opposition, Respondents argue that an injunction in this case "should not apply to the circumstance in which Petitioner becomes subject to a final order of removal" because "detention is mandatory for the first 90 days, known as the removal period, in order to effectuate removal." (ECF No. 11 at 2.)  The Court declines to address this argument in Respondents' late filing, but notes that its injunction does not prohibit re-detention, rather it requires the government to provide due process beforehand.